## Fong Estate

*James W. Kelly*, for accountant.

*Sidney B. Gottlieb*, for Yick Shan Leung, creditor.

*Marvin I. Block* and *Judith J. Jamison,* Special Assistant Attorneys General, for Commonwealth.

KLEIN, A. J., November 22, 1972.—Charles Fong, also known as Charlie Fong and Charlie Fong Leung, died on October 18, 1968, intestate and unmarried, his wife having predeceased him, leaving to survive him, according to the statement of proposed distribution and the report of counsel for the accountant annexed hereto, two grandsons, Leung Kam Hong

and Leung Kam Fang (children of decedent's son, Leung Chew, who is stated to have died in 1958), who are of age and each entitled to one-half of his estate. . . .

Decedent's grandsons, Leung Kam Hong and Leung Kam Fang, are stated to be residents of Canton, China. At the audit on April 7, 1972, Mr. Block, representing the Commonwealth of Pennsylvania, stated that there was no objection to the transmittal of funds to distributees in China. . . .

On May 18, 1972, the auditing judge filed an audit memorandum in which he stated, inter alia, "This is the first case which has ever been presented to the auditing judge in which a request is made to make an award to persons residing in the People's Republic of China. Considerable doubt exists as to whether we have the legal right to make such award."

Accordingly, the matter was continued to the deferred list which was called on Monday, October 2, 1972, in order to enable counsel to submit to the court a memorandum of law with respect to distribution to Chinese nationals.

At the continued audit, Mr. Block submitted a letter dated July 20, 1972, from Stanley L. Sommerfield, Acting Director of Foreign Assets Control of The Department of the Treasury of the United States which states, inter alia:

"The Treasury Department's Foreign Assets Control Regulations prohibit all unlicensed transfers of funds to the People's Republic of China or nationals thereof. These Regulations were amended in May 1971 by the addition of a general license which authorizes all transactions with the People's Republic of China involving United States property except property subject to United States jurisdiction as of May 6, 1971, in which China or a national thereof had

an interest at any time on or since December 17, 1950. Accordingly, you may transfer property to the People's Republic of China provided that the interest of a national of the People's Republic of China in this property was not acquired until after May 6, 1971.

"If this property is not eligible for transfer to the People's Republic of China under the general license, it remains blocked under the Foreign Assets Control Regulations and no disposition may be made of it without a specific Treasury license. One of the basic purpose [sic] of the Foreign Assets Control Regulations is to preserve blocked property intact for possible use in a future settlement of American claims against the People's Republic of China. It would not, therefore, be in accordance with existing policy to authorize the transfer of these funds to the heirs in the People's Republic of China. This property will remain blocked pending an overall decision by the Congress or the President regarding the ultimate disposition of all blocked property."

The law appears to be settled now that statutes passed by the various State legislatures attempting to regulate the transmission of funds from the estates of decedents to foreign nationals are invalid and an improper intrusion into the field of foreign affairs, which the United States Constitution entrusts exclusively to the President and the Congress: Zschernig v. Miller, 389 U.S. 429 (1968). See also Struchmanczuk Estate, 44 D. & C. 2d 155, 18 Fiduc. Rep. 186 (1968). We are, therefore, duty bound to conform to the Federal regulations.

The interest of the Chinese nationals in the present case was acquired on October 18, 1968, the date upon which their grandfather died intestate. Since this was prior to May 6, 1971, transfer of the funds to

the heirs in the People's Republic of China is forbidden.

At the initial hearing on November 5, 1970, the court was informed that the heirs in the People's Republic of China could not be located. The Commonwealth, therefore, claimed the balance remaining for distribution to decedent's two grandchildren for payment into the State Treasury, without escheat, pursuant to section 1314 of The Fiscal Code of April 9, 1929, P.L. 343, 72 PS §1314. That claim was for all practical purposes withdrawn when it was later determined that the two grandchildren were, in fact, alive and residing in Canton, China.

We note, parenthetically, that article XIII of The Fiscal Code, including section 1314, was repealed by section 30(a)(5) of Act No. 74, "Disposition of Abandoned and Unclaimed Property Act," approved by Governor Milton J. Shapp on August 9, 1971, effective January 1, 1972.

At the present time, two alternatives appear to be left to the court with respect to the disposition of this fund. We can award it back to the administrator for further accounting or we can direct that it be awarded to the clerk of the court. We choose the latter course because we think it would be unfair to the administrator to add to the burdens he has already encountered in administering this very small estate. Accordingly, the balance for distribution will be awarded to the clerk of the court.

The ultimate disposition of the fund will be determined either by further direction of the court or, in the absence thereof, by release to the Commonwealth under the provisions of Act No. 74, supra. In this regard, Mr. Sommerfield's letter to Mr. Block adds a further technical requirement before the Commonwealth can perfect its claim:

". . . the transfer of blocked property to the State in which it is located pursuant to the abandoned property laws of that State, is also prohibited unless licensed by this Office. Such transfer may be licensed provided that under Pennsylvania Law an absolute right to claim the funds exists in the true owner, his successor in interest, or the United States Government in the event of a vesting of the property."

The clerk of the court is therefore cautioned that he may not release the fund to the Commonwealth until (1) an appropriate license is issued by the Office of Foreign Assets Control of The Department of the Treasury of the United States, or (2) he is satisfied that the controlling regulations have been amended to eliminate the requirement for such a license. . . .

And now, November 22, 1972, the account is confirmed nisi.